**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CIBC BANK USA f/k/a THE PRIVATEBANK AND TRUST COMPANY, as Agent for Lenders,<br><br>       Plaintiff,<br><br>   v.<br><br>JOSEPH SCHWARTZ and ROSIE SCHWARTZ,<br><br>       Defendants. | Case No. _____ |

## <u>COMPLAINT</u>

Plaintiff CIBC Bank USA, an Illinois banking corporation formerly known as The PrivateBank and Trust Company ("CIBC"), as Administrative Agent for two groups of lenders, each comprised of CIBC and Banker's Trust Company, an Iowa banking corporation (the "Lenders"), by and through its attorneys, states the following for its Complaint against Defendants Joseph Schwartz and Rosie Schwartz:

1.      CIBC is an Illinois banking corporation which was formerly known as The PrivateBank and Trust Company ("PrivateBank"). PrivateBank's corporate name was changed to CIBC Bank USA on September 18, 2017, but without any change in the Illinois banking corporation that is now known as CIBC Bank USA. CIBC's principal place of business is in Chicago, Illinois.

2.      The other Lender for which CIBC is Agent is Banker's Trust Company, an Iowa banking corporation. Banker's Trust Company's principal place of business is in Des Moines, Iowa.

45335041v.5

3.     Defendant Joseph Schwartz is a citizen of the State of New Jersey.

4.     Defendant Rosie Schwartz is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

5.     The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Defendants because they entered into guaranty agreements with Plaintiff referred to below that were negotiated in the State of Illinois, and because in those guaranties Defendants agreed to submit to this Court's jurisdiction in any disputes arising from those guaranties.  Venue is proper in the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and because Defendants consented to venue in this District in those guaranties.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.     On or about September 26, 2016, the Lenders extended a $45,600,000 loan (the "Owner Loan") to a group of borrowers consisting of nine owners and their parent company, for their purchase of nine skilled nursing facilities.  In connection with the Owner Loan, Defendants executed a Guaranty of Payment and Performance dated as of September 26, 2016, to and for the benefit of PrivateBank (now known as CIBC) as Agent for the Lenders (the "Owner Loan Guaranty").  The borrowers under the Operator Loan referred to below also executed the Owner Loan Guaranty.  A copy of the Owner Loan Guaranty is attached hereto as Exhibit A.

8.     On or about September 26, 2016, the Lenders extended a $6,000,000 operating line of credit (the "Operator Loan") to a group of borrowers consisting of the

2

nine operators of the nine skilled nursing facilities and their first and second tier parent companies. In connection with the Operator Loan, Defendants executed a Guaranty of Payment and Performance dated as of September 26, 2016, to and for the benefit of PrivateBank (now known as CIBC) as Agent for the Lenders (the "Operator Loan Guaranty"). The borrowers under the Owner Loan referred to above also executed the Operator Loan Guaranty. A copy of the Operator Loan Guaranty is attached hereto as Exhibit B.

9. On August 11, 2017, CIBC served a notice of Events of Default on the Owner Loan on the Owner Loan borrowers and on Defendants and the other guarantors of the Owner Loan. A copy of the Notice is attached hereto as Exhibit C (the "Owner Loan Default Notice").

10. On August 11, 2017, CIBC served a notice of Events of Default on the Operator Loan on the Operator Loan borrowers and on Defendants and the other guarantors of the Operator Loan. A copy of the Notice is attached hereto as Exhibit D (the "Operator Loan Default Notice").

11. Pursuant to the Owner Loan Default Notice, CIBC notified the Owner Loan borrowers and guarantors, including Defendants, that Events of Default had occurred under the Owner Loan as follows:

(1) Under Section 7.4(a)(i) of the Loan Agreement, no later than 120 days after the end of the fiscal year ended December 31, 2016, the Borrowers were required to deliver to the Agent consolidated and consolidating annual financial statements of the Borrowers showing the results of operations of the Projects and consisting of a balance sheet, statement of income and expense and statement of cash flows, prepared in accordance with GAAP, and certified by an officer of the Borrowers, and accompanied by an audit report of a firm of independent certified public accountants acceptable to the Agent. The time for the delivery of said audited financial statements to the Agent expired 120 days after December

3

31, 2016, which was April 30, 2017 (extended to May 1, 2017, because April 30, 2017 was a Sunday). As of the date of this Notice, which is 223 days after December 31, 2016, and 102 days after May 1, 2017, the Borrowers have not delivered said audited financial statements of the Borrowers to the Agent.

   (2)  Under Section 7.4(a)(iv) of the Loan Agreement, no later than 120 days after the end of the fiscal year ended December 31, 2016, the Borrowers were required to deliver to the Agent consolidated and consolidating annual financial statements of the Operator Loan Borrowers showing the results of operations of the Facilities and consisting of a balance sheet, statement of income and expense, statement of cash flows and statement of payor mix, prepared in accordance with GAAP, and certified by an officer of the Operator Loan Borrowers, and accompanied by an audit report of a firm of independent certified public accountants acceptable to the Agent. The time for the delivery of said audited financial statements to the Agent expired 120 days after December 31, 2016, which was April 30, 2017 (extended to May 1, 2017, because April 30, 2017 was a Sunday). As of the date of this Notice, which is 223 days after December 31, 2016, and 102 days after May 1, 2017, the Borrowers have not delivered said audited financial statement of the Operator Loan Borrowers to the Agent.

   (3)  Under Section 10.1(c) of the Loan Agreement, the failure of the Borrowers to deliver said audited financial statements to the Agent within 120 days after December 31, 2016, were Events of Default at the end of the said 120 days, or April 30, 2017 (extended to May 1, 2017, because April 30, 2017, was a Sunday).

   (4)  Under Section 7.14(a)(iv) of the Loan Agreement, it is a condition of the Loan Agreement and the Loans that for the calendar quarter ended June 30, 2017, the combined EBITDAR/Fully Adjusted of Operators shall be not less than $1,775,000. The Compliance Certificate that the Agent received today from the Borrowers shows that the combined EBITDAR/Fully Adjusted of Operators for the calendar quarter ended June 30, 2017, was $1,460,487, which was $314,513 or 17.7% less than the $1,775,000 amount required by Section 7.14(a)(iv) of the Loan Agreement. This material failure to comply with Section 7.14(a)(iv) of the Loan Agreement is an immediate Event of Default under Section 10.1(b) of the Loan Agreement.

   (5)  The aforesaid Events of Default are also Events of Default under Section 14(c) of each of the Mortgages, and under other Loan Documents as provided therein.

12.     Pursuant to the Operator Loan Default Notice (Exhibit D), CIBC notified

the Operator Loan borrowers and guarantors, including Defendants, that Events of

Default had occurred under the Operator Loan as follows:

(1)     Under Section 7.4(a)(i) of the Loan Agreement, no later than 120 days after the end of the fiscal year ended December 31, 2016, the Borrowers were required to deliver to the Agent consolidated and consolidating annual financial statements of the Borrowers showing the results of operations of the Projects and consisting of a balance sheet, statement of income and expense and statement of cash flows, prepared in accordance with GAAP, and certified by an officer of the Borrowers, and accompanied by an audited report of a firm of independent certified public accountants acceptable to the Agent. The time for delivery of said audited financial statements to the Agent expired 120 days after December 31, 2016, which was April 30, 2017 (extended to May 1, 2017, because April 30, 2017 was a Sunday). As of the date of this Notice, which is 223 days after December 31, 2017, and 102 days after May 1, 2017, the Borrowers have not delivered said audited financial statements of the Borrowers to the Agent.

(2)     Under Section 7.4(a)(IV) of the Loan Agreement, no later than 120 days after the end of the fiscal year ended December 31, 2016, the Borrowers were required to deliver to the Agent consolidated and consolidating annual financial statements of the Operator Loan Borrowers showing the results of operations of the Facilities and consisting of a balance sheet, statement of income and expense, statement of cash flows and statement of payor mix, prepared in accordance with GAAP, and certified by an officer of the Operator Loan Borrowers, and accompanied by an audit report of a firm of independent certified public accountants acceptable to the Agent. The time for the delivery of said audited financial statements to the Agent expired 120 days after December 31, 2017, which was April 31, 2017 (extended to May 1, 2017, because April 30, 2017, was a Sunday). As of the date of this Notice, which is 223 days after December 31, 2017, and 102 days after May 1, 2017, the Borrowers have not delivered said audited financial statements of the Borrowers to the Agent.

(3)     Under Section 10.1(c) of the Loan Agreement, the failure of the Borrowers to deliver said audited financial statements to the Agent within 120 days after December 31, 2016 were Events of Default at the end of the said 120 days, or April 30, 2017 (extended to May 1, 2017, because April 30, 2017 was a Sunday).

(4)     Under Section 7.14(a)(iv) of the Loan Agreement, it is a condition of the Loan Agreement and the Loans that for the calendar quarter ended June 30, 2017, the combined EBITDAR/Fully Adjusted of Operators shall be not less than $1,775,000. The Compliance Certificate that the Agent received today from the Borrowers shows that the combined EBITDAR/Fully Adjusted of Operators for the calendar quarter ended June 30, 2017, was $1,460,487, which was $314,513 or 17.7% less than the $1,775,000 amount required by Section 7.14(a)(iv) of the Loan Agreement. This material failure to comply with Section 7.14(a)(iv) of the Loan Agreement is an immediate Event of Default under Section 10.1(b) of the Loan Agreement.

(5)     The aforesaid Events of Default are also Events of Default under Section 14(c) of each of the Mortgages, and under other Loan Documents as provided therein.

13.     By October 19, 2017, the Events of Default identified in the Owner Loan Default Notice (Exhibit C) and the Operator Loan Default Notice (Exhibit D) had not been cured.  The borrowers and guarantors under both the Owner Loan and the Operator Loan then entered into a Letter Agreement with CIBC as Agent for the Lenders dated October 19, 2017 (the "Letter Agreement").  A copy of the Letter Agreement is attached hereto as Exhibit E.  In Paragraph 2(i) of the Letter Agreement, the Owner Loan borrowers and guarantors (including Defendants) and the Operator Loan borrowers and guarantors (including Defendants) acknowledged and agreed that the Loan Defaults set forth in the Owner Loan Notice of Default and the Operator Loan Notice of Default had occurred, had not been cured, and were continuing as of the date of the Letter Agreement:

*          *          *          *          *

(i)     The Loan Defaults, as defined in each of the Notices of Default, have occurred, have not been cured, and are continuing as of the date of this Agreement.

See Exhibit E at ¶ 2(i).

14.     Also, in paragraph 2(ii) of the Letter Agreement (Exhibit E), the Owner Loan borrowers and guarantors (including Defendants) and the Operator Loan borrowers

6

and guarantors (including Defendants) acknowledged and agreed that under the Owner

Loan Agreement and the Operator Loan Agreement, both the Owner Loan and the

Operator Loan had been bearing Default Rate interest since the date of the earliest

default:

\*     \*     \*     \*     \*

> (ii)     Under the applicable provisions of the Owner Loan
> Agreement and the Operator Loan Agreement as identified in the Notices
> of Default, the Owner Loan and the Operator Loan have been bearing
> interest at the Default Rate provided for in each of those Loan Agreements
> since the date of the first Loan Default under each respective Loan
> Agreement, and none of such Default Rate interest has been paid.

*See* Exhibit E at ¶ 2(ii).

15.     Finally, in Paragraph 4 of the Letter Agreement (Exhibit E), the borrowers

and guarantors of both the Owner Loan and the Operator Loan, including Defendants,

requested that the Agents and Lenders forbear from exercising their remedies during the

period ending on December 31, 2017, in order to give the borrowers and guarantors time

to repay both the Owner Loan and the Operator Loan in full by December 31, 2017.

Paragraph 4 of the Letter Agreement reads in relevant part as follows:

> The Borrower/Guarantor Parties have advised the Agents that they will
> repay the principal and interest at the non-Default Rate on both the Owner
> Loan and the Operator Loan in full no later than December 31, 2017.  The
> Borrower/Guarantor Parties have requested that Agents and Lenders
> forbear from exercising remedies under the Loan Documents during the
> period ending on December 31, 2017, in order to give them time to make
> such repayment.

*See* Exhibit E at ¶ 4.

16.     In paragraph 5 of the Letter Agreement (Exhibit E), the Lenders agreed to

this request for a forbearance during the period ending on December 31, 2017.

7

17.     As agreed in the Letter Agreement (Exhibit E), the Lenders did forbear from exercising remedies during the period ending on December 31, 2017, but contrary to the Letter Agreement, the Owner Loan and the Operator Loan were not repaid by December 31, 2017, and have not been repaid as of the date of the filing of this Complaint.

18.     On February 16, 2018, CIBC issued a notice to the borrowers and guarantors of the Owner Loan and the Operator Loan, including Defendants, which in relevant part states:

> (i)     The agreement of the Agents and the Lenders in the Letter Agreement to forbear from exercising remedies ended on December 31, 2017.  The Agents and the Lenders now have the right to exercise all rights and remedies under the Loan Documents and applicable law.

> *     *     *     *     *

> (iii)     Other than delivery of the Operator Loan Borrowers' 2016 audited financial statements, the Loan Defaults that are referred to in the Letter Agreement have not been cured and are continuing as of the date of this Notice (the Owner Loan Borrowers' 2016 audited financial statements still have not been delivered).

> *     *     *     *     *

> (vii)     Under the applicable provisions of the Owner Loan Agreement and the Operator Loan Agreement, the Owner Loan and the Operator Loan are continuing to bear interest the Default Rate provided for in each of those Loan Agreements. For purposes of the Default Rate, we [the Lenders] will consider May 1, 2017, to be the date of the first Event of Default; i.e. the failure to furnish audited financial statements for the fiscal year ended December 31, 2016, although the date of the first Event of Default is actually earlier given the violation of the EBITDAR/Fully Adjusted covenant for the first quarter of 2017 that was caused by the restated financial statements, as outlined in (iv) above. Therefore, the Default Rate went into effect on both of the Loans no later than May 1, 2017 and will be calculated effective as of that date.

A copy of the February 16, 2018 notice is attached as Exhibit F.

19.     Under the applicable provisions of the loan agreements for both the Owner Loan and the Operator Loan, Default Rate interest is payable on demand by CIBC.  In the February 16, 2018 Notice (Exhibit F), CIBC advised the borrowers and guarantors of the Owner Loan and the Operator Loan, including Defendants, that the Lenders demanded payment, no later than March 1, 2018, by the borrowers and Defendants Joseph Schwartz and Rosie Schwartz as guarantors, of the Default Rate interest that was accrued through January 31, 2018.  The Default Rate interest accrued through January 31, 2018, is in the following amounts:

|              |                |
|--------------|----------------|
| Owner Loan:    | $1,767,673.64 |
| Operator Loan: | $   129,000.47 |
| Total          | $1,896,674.11 |

*See* Exhibit F at ¶ 8(ii).

20.     On February 23, 2018, CIBC sent the borrowers and guarantors of the Owner Loan and the Operator Loan, including Defendants, a Reminder Notice of, among other things, the demand for payment of the Default Rate interest, as set forth in CIBC's February 16, 2018 Notice (Exhibit F).  A copy of the February 23, 2018, Reminder Notice is attached hereto as Exhibit G.

21.     As of the date of this Complaint, Defendants have not paid the Default Rate interest in the amount of $1,896,674.11.  Pursuant to the Owner Loan Guaranty and the Operator Loan Guaranty (hereinafter "the Guaranties"), and the demand for payment of the Default Rate interest in the Notice dated February 16, 2018 (Exhibit F), the Defendants Joseph Schwartz and Rosie Schwartz were obligated to pay the amount of $1,869,772.69 to CIBC on or before March 1, 2018.

9

22.     Defendants Joseph Schwartz and Rosie Schwartz failed to pay the amount of $1,869,772.69 to CIBC on or before March 1, 2018.

23.     Defendants Joseph Schwartz's and Rosie Schwartz's failure to do so was a material breach of the Guaranties.

24.     CIBC has complied with all of its material obligations under the terms of the Guaranties.

25.     As of the date of this Complaint, Defendants are in default of their obligation to pay $1,767,673.64 to CIBC as Agent for the Lenders under the Owner Loan.

26.     As of the date of this Complaint, Defendants are in default of their obligation to pay $129,000.47 to CIBC as Agent for the Lenders under the Operator Loan.

27.     Defendants' failure to pay $1,869,772.69 is a material breach of their contractual obligations under the Guaranties.

28.     In Section 12 of both the Owner Loan Guaranty (Exhibit A) and the Operator Loan Guaranty (Exhibit B), Defendants agree to pay all fees, costs and expenses incurred by the Agent and the Lenders in connection with the enforcement of the Guaranties, including, without limitation, reasonable attorney's fees, court costs and filing fees.

## COUNT I
### Breach of Contract against Joseph Schwartz and Rosie Schwartz for Default Rate Interest on Owner Loan

29.     CIBC repeats and realleges each and every allegation contained in paragraphs 1 through 28 of the Complaint, as if fully set forth herein.

45335041v.5

30.     As of the date of this Complaint, Defendants are in default of their obligation to pay $1,767,673.64 to CIBC as Agent for the Lenders under the Owner Loan.

**WHEREFORE**, Plaintiff CIBC as Agent for the Lenders under the Owner Loan respectfully requests that this Court:

A.     Enter judgment jointly and severally against Defendants Joseph Schwartz and Rosie Schwartz in favor of Plaintiff CIBC as Agent for the Lenders under the Owner Loan in the amount of $1,767,673.64;

B.     Award Plaintiff CIBC as Agent for the Lenders under the Owner Loan its costs and expenses, including its reasonable attorneys' fees; and

C.     Award Plaintiff CIBC as Agent for the Lenders under the Owner Loan such other relief as the Court may deem just and proper.

**COUNT II**
**Breach of Contract against Joseph Schwartz and Rosie Schwartz for Default Rate Interest on Operator Loan**

31.     CIBC repeats and realleges each and every allegation contained in paragraphs 1 through 28 of the Complaint, as if fully set forth herein.

32.     As of the date of this Complaint, Defendants are in default of their obligation to pay $129,000.47 to CIBC as Agent for the Lenders under the Operator Loan.

**WHEREFORE**, Plaintiff CIBC as Agent for the Lenders under the Operator Loan respectfully requests that this Court:

A.     Enter judgment jointly and severally against Defendants Joseph Schwartz and Rosie Schwartz in favor of Plaintiff CIBC as Agent for the Lenders under the Operator Loan in the amount of $129,000.47;

45335041v.5

B.  Award Plaintiff CIBC as Agent for the Lenders under the Operator Loan

Loan its costs and expenses, including its reasonable attorneys' fees; and

C.  Award Plaintiff CIBC as Agent for the Lenders under the Operator Loan

such other relief as the Court may deem just and proper.

DATED this 23rd day of March, 2018.

CIBC BANK USA f/k/a THE
PRIVATEBANK AND TRUST
COMPANY, as Agent as aforesaid

By      */s/ Jerome F. Buch*

SEYFARTH SHAW LLP
Jerome F. Buch
Kevin J. Mahoney
Miranda E. Wargo
233 S. Wacker Drive, Ste. 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-5000
jbuch@seyfarth.com
kmahoney@seyfarth.com
mwargo@seyfarth.com

*Attorneys for Plaintiff*

45335041v.5